# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA
# Norfolk Division

**JOHNNY W. POPE, II,**

    **Plaintiff**

v.                               Case No.

                               **JURY TRIAL DEMANDED**

**WESTERN TIDEWATER**
**COMMUNITY SERVICES BOARD,**

    **Defendant**

    **Serve: Demetrios Peratsakis, Executive Director**
                **7025 Harbour View Blvd., Suite 119**
                **Suffolk, Virginia 23435**

## COMPLAINT

COMES NOW the Plaintiff, Johnny W. Pope, II ("Plaintiff" or "Mr. Pope"), by counsel, and as and for his Complaint against the Defendant, Western Tidewater Community Services Board ("Defendant" or "WTCSB") states as follows:

### Parties

1. Plaintiff is a natural person and a resident of the Commonwealth of Virginia and the City of Suffolk, Virginia. Plaintiff is an African-American male and has been diagnosed with, and receives treatment for, Attention Deficit Hyperactivity Disorder ("ADHD") and anxiety.

2. Defendant is an "operating" community services board organized under the laws of the Commonwealth of Virginia, specifically Va. Code § 37.2-500, *et seq.* Defendant is a public body and was created by the Cities of Suffolk and Franklin, and the Counties of Isle of Wight and Southampton pursuant to statute in 1971 and currently serves as an agent for such

cities and counties for various services including, *inter alia*, the provision of mental health, developmental and substance use services. Defendant is not a department or agency of any city or county government.

## Jurisdiction and Venue

3.  This civil action arises under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* as well as the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008. *See* 42 U.S.C. §§ 12101, *et seq.* ("ADA"). At all relevant times, Defendant has employed more than one hundred and one (101) persons. Jurisdiction is proper in this Court.

4.  Venue is proper in this District and Division because the Defendant conducts business within the City of Suffolk, Virginia and the events complained of herein took place within the City of Suffolk.

## Exhaustion of Administrative Remedies

5.  Prior to instituting this civil action, Plaintiff timely filed an administrative claim with the Norfolk office of the Equal Employment Opportunity Commission ("EEOC"). *See* Exhibit 1.

6.  On or about May 6, 2021, the EEOC issued a "right to sue" letter to Plaintiff after failing to resolve the Plaintiff's administrative claim. *See* Exhibit 2. Plaintiff has filed the instant civil action within ninety (90) days of his receipt of the notice authorizing him to file this civil action in federal or state court.

## Facts and Background

7.  Plaintiff began employment with Defendant on or about March 17, 2014 as a residential technician.

8. Plaintiff subsequently was transferred to the position of Administrative Specialist on or about March 5, 2018.

9. Following his becoming an Administrative Specialist, Plaintiff worked with a small group of co-workers under Brandon Rogers ("Mr. Rogers"), Defendant's Director of Operations. Plaintiff was the only African-American male of the group, known as the Program Development Team ("PDT"). In practice, Plaintiff performed similar job duties as his counterparts, however, Defendant failed and refused to update Plaintiff's job description and did not compensate Plaintiff in a manner comparable to his colleagues on the PDT.

10. Beginning on or about August 13, 2018, at least one similarly-situated co-worker on the PDT, performing similar job duties to Plaintiff but who was not an African-American male, received regular weekly training and supervision, while Defendant did not afford the same opportunities and training to Plaintiff. Plaintiff was additionally excluded from various PDT group meetings and other functions which would have contributed to his productivity and professional development. On or about November 5, 2018, Plaintiff became an Information System Specialist.

11. In early November of 2019, Plaintiff requested a meeting with Mr. Rogers in order to discuss potential cyber security vulnerabilities.

12. During the subsequent meeting between Plaintiff and Mr. Rogers, Mr. Rogers asked Plaintiff if he would be willing to speak to Defendant's Executive Director, Demetrios Peratsakis ("Mr. Peratsakis") about his concerns, to which Plaintiff agreed.

13. While meeting with Mr. Rogers and Mr. Peratsakis, Mr. Peratsakis asked Plaintiff if he had any mental health diagnoses, to which Plaintiff replied affirmatively. Mr. Peratsakis then asked Plaintiff if he had any prescriptions, to which Plaintiff replied that he took Adderall

for his ADHD as prescribed and Clonidine for anxiety, also as prescribed. Mr. Peratsakis then asked Plaintiff how much Adderall he was prescribed and, when Plaintiff told Mr. Peratsakis his prescribed dosage, he told Plaintiff that he did not think Plaintiff should take Adderall. Mr. Peratsakis then recommended that Plaintiff see a former colleague of his for counseling services and provided Plaintiff with a telephone number for the former colleague.

14. On or about January 7, 2020, Mr. Peratsakis insisted to Plaintiff that Plaintiff see another of Mr. Peratsakis' former colleagues to seek "alternative medication management."

15. Plaintiff's mother has worked approximately 36 years for WTCSB as a clinical administrator. Mr. Peratsakis additionally made inquiries to Plaintiff's mother about Plaintiff's ADHD diagnosis including whether Plaintiff had first received an ADHD diagnosis as a child.

16. With the arrival of the COVID-19 pandemic in the United States and Virginia, in March of 2020, Defendant shifted most administrative employees, including Plaintiff, to telework. In mid-April of 2020, Defendant, by and through Mr. Peratsakis and Mr. Rogers, shifted approximately 20% of Plaintiff's workload to a less-desirable position requiring Plaintiff to physically work that portion of his workload in a crisis home, an environment in which he had no prior experience, to which Plaintiff objected. Plaintiff subsequently forwarded and/or copied various email correspondence between he and Mr. Peratsakis and/or Mr. Rogers to Lara Matthews ("Ms. Matthews"), Defendant's Human Resources Administrator, while expressing to Mr. Rogers a preference to communicate in writing. Mr. Rogers subsequently suspended Plaintiff without pay.

17. Following his return from suspension, on or about May 7, 2020, Plaintiff presented Defendant with medical documentation demonstrating that a minor child in his care was afflicted with asthma in the course of requesting a removal from in-person work during the

COVID-19 pandemic. Subsequently, Defendant ended Plaintiff's in-person work duties but attempted to prevent him from using accrued leave for the final day of his in-person duties.

18. On or about May 19, 2020, Mr. Rogers issued a performance review to Plaintiff. Said review contained grades alleging that Plaintiff required improvement in certain subjective areas, including but not limited to demeanor, to which Plaintiff objected. On or about May 21, 2020, Plaintiff informed Ms. Mathews of his objections to the evaluation by forwarding her various emails he had sent to Mr. Rogers. On or about May 22, 2020, Mr. Peratsakis advised Plaintiff to not continue taking his concerns to Human Resources.

19. In June of 2020, Defendant denied Plaintiff a promotion and demoted him within the internal hierarchy. Following his demotion, Defendant placed Plaintiff under the immediate supervision of David Hopkins, a white male with substantially less seniority than Plaintiff.

20. On or about July 17, 2020, Mr. Hopkins issued Plaintiff a performance review, again containing certain below-average assessments regarding subjective matters. Plaintiff again forwarded his concerns regarding the low assessments to Ms. Matthews. On or about July 20, 2020, Mr. Peratsakis advised Plaintiff that his bringing of concerns to Human Resources was "insubordination" and could result in "possible corrective, remedial or disciplinary action."

21. On or about July 21, 2020, Mr. Hopkins held a supervision session with Plaintiff, in which he, *inter alia*, expressed criticism regarding Plaintiff's demeanor and intra-office communications, including with Human Resources. In response to a synopsis of the session, on or about July 23, 2020, Plaintiff expressed his position that the criticism was subjective and biased.

22. Following Plaintiff's objection to the most recent supervision, Mr. Hopkins referred Plaintiff to mandatory Employee Assistance Program ("EAP") counseling through

Optima Health. Under the Optima Health EAP plan, EAP is described as "a resource to help you overcome life's challenges, solve personal problems, and address work-related issues." Optima Health's EAP counselors are "licensed, Masters- or Doctorate-level clinicians or certified counselors." The stated reason for the Defendant's referral of Plaintiff to mandatory EAP was "Ineffective Communication."

23. On or about August 4, 2020, Mr. Hopkins and Ms. Matthews discussed the EAP referral with Plaintiff and, told him to return a signed copy of the EAP referral by August 6, 2020. Plaintiff returned a signed copy of the agreement on or about August 4, 2020.

24. On or about August 6, 2020, Plaintiff requested further information regarding the EAP program from Mr. Hopkins and expressed that he would like to be as informed as he could be and also expressed that impending participation in the EAP was against his will.

25. On or about August 10, 2020, Plaintiff again expressed his discomfort with participating in the EAP, and asked if there were any ramifications he would face should he refuse to participate in the EAP. In response, Mr. Hopkins stated that the EAP was a "directive" and "not optional."

26. On or about August 14, 2020, Mr. Hopkins emailed Plaintiff, with copies to Ms. Matthews and Mr. Peratsakis, stating that he had learned that Plaintiff had not scheduled an EAP appointment and providing Plaintiff with a "Group 2 write-up" as discipline for failing to schedule EAP, with further written notice issued on or about August 17, 2020. Upon information and belief, Mr. Peratsakis, who had previously inquired as to Plaintiff's mental health diagnoses and had expressed objection to Plaintiff's Adderall prescription, was at all relevant times involved with and a decision-maker in the mandatory referral of Plaintiff to EAP.

27. On or about August 21, 2020, Defendant suspended Plaintiff without pay because he had not yet scheduled EAP.

28. Plaintiff was reinstated to work on August 27, 2020. However, as of August 21, 2020, Defendant cut off Plaintiff's access to his WTCSB email account until September 14, 2020, and prevented access to the main features on his company cell phone, such as text messaging, outgoing calls, and the ability to change the phone's audio settings from silent. During this period, Defendant continued emailing Plaintiff at his work account regarding changes to the terms and conditions of his employment including, but not limited to, reassigning Plaintiff to a less-desirable in-person counselor position in a crisis home in Hampton, Virginia.

29. Plaintiff did not accept transfer to the less-desirable in-person counseling position and was subsequently suspended without pay and, as of February 10, 2021, officially terminated.

### Count I—Discrimination in Violation of 42 U.S.C. §§ 12101, *et seq.*

30. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Nine as if set out in full herein.

31. Defendant terminated Plaintiff's employment and otherwise discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to referring him to mandatory EAP over his objections for the stated reason of "ineffective communication" because he suffered from a disability, and for reasons arising from discrimination against Plaintiff on account of that disability. Alternatively, Defendant terminated Plaintiff's employment and otherwise discriminated against Plaintiff in the terms and conditions of his employment, including but not limited to referring him to mandatory EAP over his objections for the stated reason of "ineffective communication" because Defendant regarded Plaintiff as

suffering from a disability, and for reasons arising from discrimination against Plaintiff on account of regarding Plaintiff as suffering from a disability.

32. The termination of Plaintiff and the discrimination against Plaintiff in the terms and conditions of his employment constituted a violation of the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq.* (including § 12117 which cross-references the jurisdictional provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(l) and (3)).

33. The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

34. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs.

35. Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

## Count II—Retaliation in Violation of 42 U.S.C. §§ 12101, *et seq.*

36. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Nine as if set out in full herein.

37. Defendant discriminated against Plaintiff with regard to the terms and conditions of his employment, specifically, with regard altering the terms and conditions of his employment, requiring mandatory EAP over Plaintiff's objections and, ultimately, his termination, due to his engagement in protected activity, namely, making workplace complaints regarding discrimination and harassment against him or, alternatively, what Plaintiff reasonably believed to be discrimination and harassment.

38. This retaliation against Plaintiff for engaging in protected activities constituted violations of the Americans with Disabilities Act of 1990 and the ADA Amendments Act of 2008. *See* 42 U.S.C. §§ 12101, *et seq.*

39. The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

40. Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: altering the terms and conditions of Plaintiff's employment, requiring mandatory EAP over Plaintiff's objections, and ultimately terminating Plaintiff.

41. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs.

**Count III--Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

42. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Nine as if set out in full herein.

43. Defendant discriminated against Plaintiff with regard to the terms and conditions of his employment, specifically, with regard to his termination, pre-termination discipline/evaluations and terms and conditions of employment (including, but not limited to, compensation, receipt of evaluations/feedback, inclusion in meetings and professional development opportunities) due to his race.

44. The termination, pre-termination discipline and terms and conditions of employment of Plaintiff constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

45. The Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

46. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs. Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

**Count IV—Retaliation in Violation of Title VII, 42 U.S.C. § 2000e,** *et seq.*

47. Plaintiff incorporates by reference the allegations of Paragraphs One through Twenty-Nine as if set out in full herein.

48. Defendant discriminated against Plaintiff with regard to the terms and conditions of his employment, including but not limited to altering the terms and conditions of Plaintiff's employment, requiring mandatory EAP over Plaintiff's objections, and ultimately terminating Plaintiff due to his engagement in protected activities including making complaints to his supervisors and/or human resources, regarding harassment and discrimination based upon his race, or alternatively, what Plaintiff reasonably believed to be harassment and discrimination and/or a hostile workplace, all of which Defendant knew of. Plaintiff's complaints were protected activities.

49. This retaliation against Plaintiff for engaging in protected activities constituted a violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.

50. Defendant's conduct was motivated by malice, spite and ill will; was willful and wanton, and evinced conscious disregard for the rights of Plaintiff.

51. Defendant's acts of malice, spite, and ill will which evince a conscious disregard for the rights of Plaintiff include, but are not limited to: retaliating against him due to his

engagement in protected activity and discharging him because of his engagement in protected activity.

52. As a direct and proximate result of the Defendant's actions, Plaintiff has suffered and continues to suffer economic and non-economic damages, including lost back pay, lost front pay, lost benefits and other wages, emotional distress and attorney's fees and costs. Due to the severity of Defendant's conduct, Plaintiff is also entitled to punitive damages.

WHEREFORE, the Plaintiff, Johnny W. Pope, II, by counsel, prays that this honorable Court grant him such relief to which he is entitled including, but not limited to, lost back pay, loss of front pay, restitution, unpaid wages, unpaid overtime, compensatory damages and punitive damages, liquidated damages as well as pre- and post-judgment interest, attorney's fees and litigation costs and such other relief as deemed just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

                                            **JOHNNY W. POPE, II,**

                                            /s/*Steven B. Wiley*
                                            Steven B. Wiley (VSB No. 47531)
                                            WILEY LAW OFFICES, PLLC
                                            440 Monticello Ave., Suite 1817
                                            Norfolk, Virginia 23510
                                            (757) 955-8455
                                            (757) 319-4089 facsimile
                                            swiley@wileylawoffices.com

                                            *Counsel for Plaintiff*